UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSEPH ROGERS, DEBRA JONES
STEVENSON, FRANK GARRIDO,
TAYLOR ARMIGER, and GWENDOLYN
THOMPSON, on behalf of themselves and
all others similarly situated,

                    Plaintiffs,

    v.

ASSURANCE IQ, LLC and
BOOMSOURCING, LLC,

                    Defendants.

CASE NO. 2:21-cv-00823-TL

ORDER GRANTING IN PART AND
DENYING IN PART MOTIONS TO
DISMISS

This matter comes before the Court on motions to dismiss filed by Defendant Assurance

IQ, LLC (Dkt. No. 55) and Defendant Boomsourcing, LLC (Dkt. No. 59), respectively. Plaintiffs

Joseph Rogers, Debra Jones Stevenson, Frank Garrido, Taylor Armiger, and Gwendolyn

Thompson filed this putative class action under the Telephone Consumer Protection Act

("TCPA"), 47 U.S.C. § 227, *et seq.*, after having allegedly received illegal telemarketing calls for

Assurance IQ's insurance services from Boomsourcing and another vendor. Having considered

the relevant record and governing law and finding oral argument unnecessary (*see* LCR 7(b)(4)), the Court GRANTS the motions in part with leave to amend and DENIES them in part.

## I.   BACKGROUND

Plaintiffs filed their original complaint in June 2021 (Dkt. No. 1) and filed the operative complaint ("Second Amended Complaint") in April 2022 (Dkt. No. 48). Each plaintiff alleges receiving, without consent, pre-recorded telemarketing calls from insurance company Assurance IQ on their cellphones or residential landlines between late 2020 and mid-2021. Dkt. No. 48 ¶¶ 27, 33, 37–40, 43, 46–50, 54–55, 58–61, 64, 68–73, 75–82. Plaintiffs Rogers and Thompson also allege that they received these calls from Assurance IQ despite having their numbers registered on the National Do Not Call Registry ("the DNC list"). *Id.* ¶¶ 34, 65.

Plaintiffs claim that Defendant Boomsourcing contracted with Assurance IQ and seek to hold it liable as a vendor/platform provider that made calls on Assurance IQ's behalf. *Id.* ¶¶ 9, 16. According to the complaint, Boomsourcing "physically dialed th[e] calls" to Plaintiffs Rogers, Stevenson, Thompson, and Arminger. *Id.* ¶¶ 39, 49, 72, 81. Plaintiffs further allege that Assurance IQ hired non-defendant Torchlight Technology Group LLC to generate new insurance leads and that a call center used by Torchlight Technology placed a pre-recorded voice call to Plaintiff Garrido. *Id.* ¶¶ 55–58, 96.

Plaintiffs seek to represent two nationwide classes. *Id.* ¶ 102. Their proposed Robocall Class includes all persons within the United States who received a pre-recorded voice telemarketing call from Assurance IQ (or a third party acting on Assurance IQ's behalf) to their residential or cellular telephone numbers in the four years preceding the complaint "after obtaining the telephone number from the same source from which it obtained Plaintiff's phone numbers." *Id.* ¶ 103. Their proposed National Do Not Call Registry Class includes all persons within the United States who received more than one telemarketing call within a twelve-month

1    period from Assurance IQ (or a third party acting on Assurance IQ's behalf) in the four years

2    preceding the complaint "after obtaining the telephone number from the same source from which

3    it obtained Plaintiff's phone numbers" even though their telephone numbers had been on the

4    DNC list for at least thirty-one days. *Id.* ¶ 104.

5                   **II.   LEGAL STANDARDS**

6    **A.   Motions to Dismiss**

7         When a plaintiff "fails to state a claim upon which relief can be granted," the defendant

8    may move for dismissal. Fed. R. Civ. P. 12(b)(6). In reviewing a 12(b)(6) motion to dismiss, the

9    Court takes all well-pleaded factual allegations as true and considers whether the complaint

10   "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

11   (2009) (citation and quotation marks omitted); *accord Bell Atlantic Corp. v. Twombly*, 550 U.S.

12   544, 555–56 (2007). While "[t]hreadbare recitals of the elements of a cause of action, supported

13   by mere conclusory statements" are insufficient, a claim has "facial plausibility" when the party

14   seeking relief "pleads factual content that allows the court to draw the reasonable inference that

15   the defendant is liable for the misconduct alleged." *Id*. at 672. "When reviewing a dismissal

16   pursuant to Rule . . . 12(b)(6), 'we accept as true all facts alleged in the complaint and construe

17   them in the light most favorable to plaintiff[], the non-moving party.'" *DaVinci Aircraft, Inc. v.*

18   *United States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (quoting *Snyder & Assocs. Acquisitions LLC*

19   *v. United States*, 859 F.3d 1152, 1156–57 (9th Cir. 2017)).

20        A motion to dismiss may also be brought where subject matter jurisdiction is lacking. *See*

21   Fed. R. Civ. P. 12(b)(1). The Court must dismiss a case if it determines that it lacks subject

22   matter jurisdiction "at any time." Fed. R. Civ. P. 12(h)(3).

23   **B.   The TCPA**

24        Congress passed the TCPA to curb abusive telemarketing practices following the

development of automated technology that could make calls using artificial or pre-recorded voices ("robocalls"). *See Facebook v. Duguid*, 141 S. Ct. 1163, 1167 (2021). The Federal Communications Commission ("FCC") is authorized to issue regulations regarding the TCPA. As relevant here, the TCPA prohibits (1) use of a pre-recorded voice in telemarketing calls to residential phones without prior express consent of the called party, 47 U.S.C. § 227(b), and (2) telemarketing calls to residential telephone subscribers on the DNC list, 47 U.S.C. § 227(c); *Jones v. Royal Admin. Servs.*, 887 F.3d 443, 448 (9th Cir. 2018). The TCPA provides individuals who receive prohibited calls a private right of action to sue for damages. *See* 47 U.S.C. §§ 227(b)(3), (c)(5). Only the caller and individuals or entities in an agency relationship with the caller can be held liable. *See Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 (9th Cir. 2014), *aff'd*, 577 U.S. 153, 168 (2016). Violators must pay $500 in damages—an amount that can be tripled at the court's discretion if the violation was knowing or willful—for each infringing call. 47 U.S.C. §§ 227(b)(3), (c)(5).

### III.   DISCUSSION

Defendants present seven independent arguments for dismissal.

**A.   Use of a Pre-recorded Voice**

Defendants seek dismissal of the first cause of action, a claim under 47 U.S.C. § 227(b) for delivery of pre-recorded telemarketing messages to cellular and residential telephone numbers. Dkt. No. 55 at 6–7; Dkt. No. 59 at 20–22.

**1.   Requests for Judicial Notice**

As a preliminary matter, Plaintiffs ask the Court consider evidence not included in the complaint in assessing the adequacy of this claim. Dkt. No. 56 at 3; Dkt. No. 63 at 6–7.

Generally, a district court may only consider the pleadings when ruling on a 12(b)(6) motion to dismiss; otherwise, it must convert the motion to dismiss into a motion for summary

judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, courts may

properly consider the following extrinsic evidence when ruling on a 12(b)(6) motion:

(1) "material which is properly submitted as part of the complaint"; (2) documents not physically

attached to the complaint on which the complaint "necessarily relies" and whose authenticity is

not contested; and (3) matters of public record. *Id*. at 688–89; *accord Allen v. Wilmington Trust,*

*N.A.*, 735 F. App'x 422, 423 (9th Cir. 2018). A court may consider unattached documents on

which a complaint "necessarily relies" where: "(1) the complaint refers to the document; (2) the

document is central to the plaintiff's claims, and (3) no party questions the authenticity of the

document." *United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011) (citations

omitted). Matters of public record may be judicially noticed so long as they are not "subject to

reasonable dispute." *Id*. (quoting Fed. R. Evid. 201(b) and *Lee v. City of Los Angeles*, 250 F.3d at

689). A fact is not subject to reasonable dispute if it is (1) "generally known" within the

territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by

resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

The Court DECLINES to take judicial notice of "Assurance's own filings with the Federal

Communications Commission" that apparently confirm Assurance IQ's strategy of marketing its

insurance services through use of pre-recorded voice messages, as Plaintiffs urge in their

response brief. *See* Dkt. No. 56 at 3. Such filings may be judicially noticed as matters of public

record. However, Plaintiffs neither attached the relevant FCC filings nor adequately described

them to enable the Court to locate them or gauge their significance. The Court is not required to

do Plaintiffs' work for them. *See, e.g., Banks v. ACS Education*, 638 F. App'x 587, 589 n.1 (9th

Cir. Jan. 4, 2016) (denying motion for judicial notice where appellant did not "identify or attach

the documents or explain their relevance to his case").

Similarly, the Court DECLINES to take judicial notice of a page of Boomsourcing's

1   website that Plaintiffs argue confirms its use of pre-recorded calls merely because Boomsourcing

2   purports to place calls using soundboard technology. *See* Dkt. No. 56 at 3. Not only have

3   Plaintiffs failed to demonstrate that the webpage is an appropriate subject for judicial notice, but

4   the Court is also unwilling to make the inferential leap that *any* use of soundboard technology

5   necessarily entails placement of pre-recorded voice calls in violation of the TCPA.

6       **2.**    **Adequacy of the Factual Allegations**

7          To plead a TCPA claim under § 227(b), Plaintiffs must allege the following elements:

8   (1) a defendant called their cellular or residential phone numbers, (2) using an artificial or

9   pre-recorded voice, (3) without their prior express consent. *See Meyer v. Portfolio Recovery*

10  *Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). Defendants contend that Plaintiffs have

11  merely made "naked assertions" regarding use of a pre-recorded voice. Dkt. No. 59 at 21; *see*

12  *also* Dkt. No. 55 at 6–7. Specifically, Plaintiffs have alleged the following:

- 13,14     "One of Assurance IQ's strategies for marketing its insurance services includes the use of prerecorded messages" (Dkt. No. 48 ¶ 28);

- 15     "Assurance IQ engages in prerecorded calls to solicit new customers" (*id.* ¶ 29);

- 16,17     "To send those pre-recorded calls, Assurance IQ uses third parties, such as Boomsourcing" (*id.* ¶ 30);

- 18,19     Each plaintiff received at least one call that "used" or "began with a prerecorded message regarding the sale of insurance" (*id.* ¶¶ 40, 50, 58, 71, 79);

- 20,21     The calls to Plaintiffs Stevenson, Thompson, and Armiger "advertise[d] healthinsurance.net, which is owned and operated by Assurance" (*id.* ¶¶ 51, 73, 82);

- 22,23     In the call to Plaintiff Garrido, "[t]he company wasn't identified in the prerecorded message" (*id.* ¶ 59);

- 24     "Other individuals have indicated that they have received similar unwanted calls"

from Assurance, citing an online complaint by a non-plaintiff stating that "[t]he # that calls is a local # and the automated voice mail is considered not wanted and harassments" (*id.* ¶ 84); and

- "Assurance IQ has received multiple complaints about their prerecorded calling process, including from state attorneys general" (*id.* ¶ 86).

Even accepting all of these allegations as true, they do not provide insight into why Plaintiffs believe the calls made to them were pre-recorded beyond simply stating that they were. "In reviewing TCPA complaints which echo or recite the Act's statutory language, some courts have struggled with whether a particular allegation is a legal conclusion[,] a fact[,] or both." *Vaccaro v. CVS Pharmacy*, No. C13-174, 2013 WL 3776927, at *2 n.4 (S.D. Cal. July 16, 2013).

District courts within the Ninth Circuit have taken varied approaches on what is required to properly allege a TCPA claim regarding pre-recorded calls. A minority have found barebones allegations of a pre-recorded call to be sufficient. *See, e.g., Vaccaro*, 2013 WL 3776927, at *2 ("That the calls were made using an artificial or prerecorded voice is a factual allegation rather than a legal conclusion."); *but see Rahimian v. Adriano*, No. C22-2189, 2022 WL 798371, at *2 (D. Nev. Mar. 16, 2022) (explaining that most courts in California have required specific facts to support the conclusion that defendants used a pre-recorded voice and calling a decision adopting *Vaccaro*'s reasoning "an outlier"). More recently, courts within the Ninth Circuit have required plaintiffs to plead "circumstances that could support an inference that the calls were placed with . . . an artificial or prerecorded voice." *Caruso v. Cavalry Portfolio Servs.*, No. C19-1224, 2019 WL 4747679, at *4 (S.D. Cal. Sept. 30, 2019); *see also Rahimian*, 2022 WL 798371, at *3 (dismissing TCPA pre-recorded voice claim because "[w]ithout further specifics, Plaintiff's allegation is conclusory."); *Winters v. Quicken Loans*, No. C20-112, 2020 WL 592002, at *4 (S.D. Ariz. Sept. 4, 2020) (same); *Daniels v. ComUnity Lending, Inc.*, No. C13-488, 2015 WL

541299, at *7 (S.D. Cal. Feb. 9, 2015) (dismissing complaint alleging "that calls to Plaintiffs[']
cellular telephones included prerecorded voice calls . . . . [without any] facts to make this
allegation plausible").

Even at this pre-discovery stage, Plaintiffs should be able to allege facts establishing that
the calls were in-fact pre-recorded, such as the "tenor, nature, or circumstances of the alleged
calls," *Manopla v. Sansone Jr.'s 66 Automall*, C17-16522, 2020 WL 1975834, at *2 (D.N.J. Jan.
10, 2020), or otherwise demonstrate that a live human was not speaking during the calls. This
information is known to Plaintiffs without any discovery. For example, "[a] TCPA plaintiff
could describe the robotic sound of the voice on the other line, the lack of human response when
he attempted to have a conversation with the 'person' calling him, the generic content of the
message he received, or anything else about the circumstances of a call or message contributing
to his belief it was pre-recorded." *Johansen v. Vivant, Inc*., No. C12-7159, 2012 WL 6590551, at
*3 (N.D. Ill. Dec. 18, 2012).

The Court holds that Plaintiffs have failed to state a claim under 47 U.S.C. § 227(b).

**B.    The Do Not Call Claim**

A National Do Not Call registry claim can be made by residential telephone subscribers
who have registered their phone numbers on the DNC list. 47 U.S.C. § 227(c)(5). Defendants
argue that Plaintiffs have failed to allege: (1) that their phone numbers are used for residential
purposes; and (2) that they placed their own numbers on the DNC list (as opposed to someone
else placing their numbers on the list). Dkt. No. 55 at 6–8; Dkt. No. 59 at 22–24.

The Court agrees with Defendants. Again, this information is known to Plaintiffs without
any discovery and should be simple to include. "A plaintiff is the master of his complaint and
responsible for articulating cognizable claims." *Newtok Vill. v. Patrick*, 21 F.4th 608, 616 (9th
Cir. 2021). Plaintiffs chose to use the passive voice to allege that both Plaintiffs Rogers' and

1  Thompson's phone numbers were "registered on the National Do Not Call Registry." Dkt. No.

2  48 ¶¶ 34, 65. However, the numbers could have been registered by previous owners of those

3  numbers rather than by Plaintiffs themselves. Plaintiffs further chose to describe that the

4  telephone numbers were for "personal use" (*id.* ¶¶ 35, 66), which does not necessarily equate

5  with residential use. The statute invoked by Plaintiffs specifically applies to subscribers of

6  "residential" phones. 47 U.S.C. § 227(c)(5). These are facts that are easily within the knowledge

7  of Plaintiffs and can be pleaded to remove any doubt about whether Plaintiffs Rogers and

8  Thompson actually registered their own numbers on the DNC list and whether those numbers are

9  for residential use. For example, Plaintiffs made such an allegation with respect to Plaintiff

10  Stevenson, whose number they described as "a residential landline" (*see* Dkt. No. 48 ¶ 43) but

11  failed to do the same for Plaintiffs Rogers and Thompson. While the Court construes all

12  inferences in Plaintiffs' favor, the conclusory allegations simply require too many inferential

13  leaps as currently drafted.

14  The Court holds that Plaintiffs have failed to state a claim under 47 U.S.C. § 227(c).

15  **C.   Theories of Liability**

16  **1.   Direct Liability**

17  Defendant Boomsourcing contends that as a matter of law, as well as based on the facts

18  pleaded, it cannot be held directly liable under the TCPA. Dkt. No. 59 at 6–11. Generally,

19  "'[u]sers of [telecommunications] services, not the carriers providing the services, [are] held

20  liable' under the TCPA." *Kauffmann v. CallFire, Inc.*, 141 F. Supp. 3d 1044, 1047 (S.D. Cal.

21  2015) (citations omitted). This exemption does not apply where a carrier or calling service

22  platform provider (1) "took the steps necessary to physically place the call" or (2) "was so

23  involved in placing the call so as to be deemed to have initiated it." *In re Rules & Reguls.*

24  *Implementing the TCPA of 1991*, 30 FCC Rcd. 7961, 7980 (2015) ("2015 FCC Order"), *set aside*

1    *in part on other grounds*, *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018).

2          A platform provider may be held directly liable for a call that violates the TCPA where it

3    controlled the messaging or timing of the message, controlled the recipient list, willfully enabled

4    "fraudulent spoofing of telephone numbers," assisted its telemarketing customer in blocking

5    caller ID, or knowingly allowed the telemarketer to violate the TCPA. *See Frank v. Cannabis &*

6    *Glass*, No. C19-2502019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019) (citing 2015 FCC Order

7    at 7980–84). None of those circumstances were pleaded in the present complaint.

8          As masters of their complaint, Plaintiffs merely pleaded that Boomsourcing "physically

9    dialed" pre-recorded calls to Plaintiffs Rogers, Stevenson, Thompson, and Armiger (none of

10   whom consented to receive those calls) on behalf of Assurance IQ. Dkt. No. 48 ¶¶ 28–31, 37–40,

11   46–50, 68–72, 76–81. Plaintiffs have not pleaded that Boomsourcing was aware that Assurance

12   IQ was using its platform to send pre-recorded calls in violation of the TCPA. *See id.* Though

13   Plaintiffs contend in their response to Boomsourcing's motion that Defendants had a contract

14   requiring Boomsourcing to physically place calls on behalf of Assurance IQ, they did not state so

15   in the complaint. *Compare* Dkt. No. 63 at 5 *with* Dkt. No. 48. Even if it had been properly

16   pleaded, the Court is not satisfied the existence of such a contract term alone would suffice to

17   establish direct liability.

18         Moreover, Plaintiffs have not pleaded any *facts* supporting their inference that

19   Boomsourcing physically dialed the calls to four of the individual plaintiffs. *See* Dkt. No. 48. A

20   TCPA plaintiff must allege facts to support their belief that the defendant placed the calls at

21   issue, such as "how the caller identified itself, the substance of the calls," or other details

22   revealing that the defendant actually took steps to place the calls. *See Aaronson v. CHW Grp.,*

23   *Inc.*, No. C18-1533, 2019 WL 8953349 (E.D. Va. Apr. 15, 2019); *see also Adzhikosyan v.*

24   *Callfire, Inc.* No. C19-246, 2019 WL 7856759, at *3 (C.D. Cal. Nov. 20, 2019) (dismissing

TCPA complaint because plaintiff failed to explain how he knew defendant sent the texts at issue).

The Court therefore holds that Plaintiffs have failed to state a claim against Defendant Boomsourcing and GRANTS the motion to dismiss the claims against it based on a theory of direct liability.

### 2.      Vicarious Liability

The FCC has ruled that sellers can be held vicariously liable under federal common-law agency principles for their telemarketing agents' violations of TCPA Sections 227(b) or 227(c). *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 (2013) ("2013 FCC Order"); *see also Campbell-Ewald Co.*, 768 F.3d at 878 (presuming that Congress intended to incorporate tort-related vicarious liability standards to the TCPA and finding that presumption consistent with the FCC's interpretations). The FCC also has indicated that consumers should not be required to develop all of the facts surrounding the agency relationship at the pleadings stage. *See id.* at 6592–93 (noting that evidence of vicarious liability should be discoverable and "nothing in this order requires a consumer to provide proof—at the time it files its complaint— that the seller should be held vicariously liable for the offending call"). Still, a TCPA complaint for vicarious liability should include allegations supporting the existence of an agency relationship. *See Fabricant v. Elavon, Inc.*, No. C20-2960, 2020 WL 11884505, at *4–6 (C.D. Cal. Aug. 25, 2020) (dismissing TCPA complaint with leave to amend where plaintiff failed to plead the agency relationship necessary to support a vicarious liability claim); *Naiman v. TranzVia LLC*, No. C17-4813, 2017 WL 5992123, at *10–13 (N.D. Cal. Dec. 4, 2017) (same).

"An essential element of agency is the principal's right to control the agent's actions." Restatement (Third) of Agency § 1.01 cmt. f(1) (Am. L. Inst. 2006). To establish an agency relationship for TCPA purposes, "the plaintiff must show that the principal controlled the

1    'manner and means' of the allegedly violating phone call." *Fabricant*, 2020 WL 11884505, at *4

2    (citing *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012)).

3        Defendant Assurance IQ claims that it cannot be held vicariously liable under the TCPA

4    based on Plaintiffs' allegations. *See* Dkt. No. 57 at 5–8. Plaintiffs counter that Boomsourcing

5    contracts with Assurance IQ and that Assurance IQ required Boomsourcing to place the calls.

6    Dkt. No. 63 at 5. But these allegations needed to be made in the complaint, and they were not.

7    The sole reference in the Second Amended Complaint with regard to any contract is that

8    "Boomsourcing contracted with Assurance in this District." Dkt. No. 48 ¶ 9. However, there is

9    no information as to what was covered by the contract between Assurance and Boomsourcing or

10   whether the contract required Boomsourcing to place pre-recorded calls. Nor does the complaint

11   allege that Assurance IQ directed those vendors to call individuals on the DNC list. *Compare*

12   Dkt. No. 63 (response brief making this allegation) *with* Dkt. No. 48 (complaint).

13       Plaintiffs further allege that Assurance IQ instructed Boomsourcing on who to call,

14   provided the phone numbers to call, gave instructions to use pre-recorded voice messages, and

15   approve a pre-recorded script for those calls. *Id.* ¶¶ 92–95. But these conclusory statements—

16   which are more akin to a recitation of the factors for establishing vicarious liability—do not

17   provide "any facts showing how [Assurance IQ] did those things or how it knew those things, or

18   what facts the allegations are based on . . . ." *Naiman*, 2017 WL 5992123, at *11. Plaintiffs may

19   have this information, as they have a copy of the contract between Assurance IQ and

20   Boomsourcing (*see* Dkt. No. 63 at 5); yet, they did not include the information in their

21   complaint. Indeed, the contract was only mentioned in the complaint for the purpose of

22   establishing venue. *See* Dkt. No. 48 ¶ 9 (stating "Boomsourcing contracted with Assurance in

23   this District and in doing so, likely agreed to this District as a venue for disputes related to that

24   agreement").

Plaintiffs present even less support with respect to Assurance IQ's relationship with Torchlight Technology, which allegedly physically dialed a pre-recorded call to Plaintiff Frank Garrido. Dkt. No. 48 ¶¶ 12, 56–57. Plaintiffs contend that "Assurance IQ only allowed Torchlight Technology to call (a) individuals who were insured with certain companies (b) lived in certain geographic regions and (c) [met] other criteria related to the type of insurance prospect that could be offered." *Id.* ¶ 97. Plaintiffs allege that Assurance IQ "maintained interim control over the actions of Torchlight Technology" by providing the dates and times on which to make the calls, as well as instructions "on how to consummate a transfer for an interested consumer." *Id.* ¶¶ 98–99. But Plaintiffs do not even allege that Assurance IQ instructed Torchlight Technology to make any pre-recorded calls. *See supra* Section III.A.2; *see also* Dkt. No. 48 ¶¶ 96–99.

Again, there are simply too many leaps Plaintiffs request be made without any supporting facts, even at this early stage of the case. Thus, the Court holds that Plaintiffs have not sufficiently alleged that Assurance IQ is vicariously liable for the TCPA violations it contends were committed by Boomsourcing or Torchlight Technology. The Court GRANTS the motion to dismiss the claims against Assurance IQ based on a theory of vicarious liability.

## D.   "Knowing" or "Willful" TCPA Violations

Defendants argue that Plaintiffs' barebones conclusions that their violations of the TCPA were willful and knowing are insufficient to support a prayer for increased damages above the statutory $500 per infringing call. Dkt. No. 55 at 11; Dkt. No. 59 at 24–25. Plaintiffs have alleged that Assurance IQ explicitly instructed Boomsourcing to use pre-recorded messages and approved the script for that pre-recorded message and that it "maintained interim control" over Torchlight Technology's actions and provided the vendor with parameters regarding whom to call. Dkt. No. 48 ¶¶ 94–95, 97–99. They also allege "Defendants' violations [of § 227(c)] were

1    knowing or willful." *Id.* ¶ 126.

2           Courts within this circuit have repeatedly found similarly conclusory allegations

3    regarding the willful or knowing nature of TCPA violations to be sufficient to withstand a

4    motion to dismiss. *See Keifer v. HOSOPO Corp.*, No. C18-1353, 2018 WL 5295011, at *5 (S.D.

5    Cal. Oct. 25, 2018) (finding enough support in an allegation that "the foregoing acts and

6    omissions of Defendant constitute numerous and multiple knowing and/or willful violations of

7    the TCPA" to deny dismissal and collecting cases). While the complaint's allegations could be

8    strengthened by inclusion of further facts, such as any requests Plaintiffs made to Defendants to

9    stop the unwanted calls, *see Quicken Loans*, 2020 WL 5292002, at *5, further factual

10   development is unnecessary at this stage in the litigation. The Court therefore DENIES the motion

11   to dismiss with respect to Plaintiffs' request for treble damages.

12   **E.      Lack of Subject Matter Jurisdiction**

13          To have standing to seek injunctive relief, a plaintiff must allege either "continuing,

14   present adverse effects" due to exposure to the defendant's past illegal conduct, or "a sufficient

15   likelihood [of being wronged again] in a similar way." *Villa v. Maricopa Cnty.*, 865 F.3d 1224,

16   1229 (9th Cir. 2017) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) and *City of Los*

17   *Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). "When evaluating whether [the requisite injury for

18   standing purposes] is present, we must look at the facts *as they exist at the time the complaint*

19   *was filed*." *Am. Civ. Liberties Union of Nev. v. Lomax*, 471 F.3d 1010, 1015 (9th Cir. 2006)

20   (emphasis in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

21          Here, Plaintiffs seek to prevent Defendants from "making telemarketing calls to any

22   cellular or residential telephone numbers using an artificial or prerecorded voice in the future,"

23   and from advertising their goods and services on a non-emergency basis "to any number on the

24   National Do Not Call Registry in the future." Dkt. No. 48 ¶¶ 122, 125. The most recent

allegations of pre-recorded phone calls in the Second Amended Complaint date back to June 2021 (Dkt. No. 48 ¶¶ 56, 69), which is the month the original complaint was filed (*see* Dkt. No. 1). Defendants argue that Plaintiffs have not adequately alleged continuing or future injury and therefore cannot obtain an injunction under the TCPA. Dkt. No. 55 at 12; Dkt. No. 59 at 25–26.

In *Campbell v. Facebook*, the Ninth Circuit upheld a settlement agreement in a class action alleging that Facebook had captured, read, and used website links in its users' private messages without their consent where a "combination of continuing harm plus likelihood of future harm was sufficient for Plaintiffs to have standing to seek injunctive relief." 951 F.3d 1106, 1111, 1119 (9th Cir. 2020). There, the court was satisfied that plaintiffs had shown continuing and future harm because the defendant was actively violating their privacy at the time they filed suit, the defendant never claimed to have ceased the challenged conduct, and the defendant's "ongoing retention of the data collected from private messages meant that there was a risk that it would resume [the challenged conduct]." *Id.* at 1119. Similarly, the instant action was filed around the time the TCPA violations allegedly occurred, Defendants have not claimed to have ceased the challenged conduct, and Defendants have made no representation that they have taken action to prevent continuance of the challenged conduct, such as deleting Plaintiffs' phone numbers from their records or ceasing their calls to Plaintiffs since the complained-of incidents. *See Miller v. Time Warner Cable, Inc.*, No. C16-329 2016 WL 7471302, at *4 (9th Cir. Dec. 27, 2016) (finding plaintiff lacked standing to request injunctive relief under the TCPA where defendant presented evidence it had received and respected plaintiff's do-not-call request).

For these reasons, the Court holds that Plaintiffs have standing to pursue injunctive relief.

**F.      Leave to Amend**

Defendants contend that Plaintiffs should be denied leave to amend their complaint because their previous amendments failed to cure its deficiencies. Dkt. No. 55 at 12–13; Dkt. No.

1 59 at 26. Where a complaint is dismissed for failure to state a claim, "leave to amend should be

2 granted unless the court determines that the allegation of other facts consistent with the

3 challenged pleading could not possibly cure the deficiency." *See Schreiber Distrib. Co. v. Serv-*

4 *Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see also Rahimian*, 2022 WL 798371,

5 at *2 (granting motion to dismiss with leave to amend TCPA claims). Though Plaintiffs have

6 already twice amended their complaint, there is no basis to infer that further amendment would

7 be futile, as those amendments were not made in response to a motion to dismiss. Therefore, the

8 Court GRANTS Plaintiffs one final opportunity to amend their complaint.

9 **G.      Class Allegations Under Rule 12(f) and Rule 23**

10         As an alternative to dismissing the complaint in its entirety, Defendant Boomsourcing

11 asks the Court to strike "faulty proposed class definitions . . . , other class-related allegations

12 . . . , and 'superfluous historical' allegations" from the complaint under Rules 12(f) and 23. Dkt.

13 No. 59 at 26. Courts have the power to "strike from a pleading an insufficient defense or any

14 redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However,

15 "[m]otions to strike are disfavored, because they may be used as delaying tactics and because of

16 the strong policy favoring resolution on the merits." *Chao Chen v. Geo Grp., Inc.*, 297 F. Supp.

17 3d 1130, 1132 (W.D. Wash. 2018) (citations and quotations omitted). This is especially true of

18 motions to strike class action allegations, as "the shape and form of a class action evolves only

19 through the process of discovery." *Hoffman v. Hearing Help Express, Inc.*, No. C19-5960, 2020

20 WL 4279176, at *2 (W.D. Wash. Mar. 27, 2020) (citations omitted); *see also Dorian v. Amazon*

21 *Web Servs., Inc.*, No. C22-269, 2022 WL 3155369, at *2 n.1 (W.D. Wash. Aug. 8, 2022)

22 (refusing to consider "premature" request to strike class allegations at the motion to dismiss

23 stage).

24         Boomsourcing insists that paragraph 84 of the Second Amended Complaint contains an

immaterial and prejudicial reference to anonymous online posts by disgruntled consumers. Dkt.

No. 59 at 27. Specifically, Plaintiffs have alleged that others have indicated receipt of "similar

unwanted calls" by quoting a post on the online forum 800notes.com regarding unwanted

"automated" telemarketing messages from "Assurance Insurance." Dkt. No. 48 ¶ 84; *see also*

*supra* Section III.A.2. Though the relevance of this allegation as currently pleaded is

questionable, the Court is not inclined to strike it at this time given Boomsourcing's failure to

show prejudice due to its inclusion and because Plaintiffs are granted leave to amend their

complaint. As for the class allegations, the Court shall RESERVE RULING on their propriety

pending a potential motion for class certification.

## IV.   CONCLUSION

For the reasons and to the extent specified above, the Court GRANTS the motions to

dismiss (Dkt. Nos. 55, 59) in part with leave to amend and DENIES them in part. Should Plaintiffs

choose to amend, their third amended complaint must be filed within **thirty (30) days** of this

Order.

Dated this 27th day of March 2023.

Tana Lin
United States District Judge